St. James Orphan Asylum v. Shelby.

---

ST. JAMES ORPHAN ASYLUM, APPELLEE, v. MARY B. SHELBY ET AL., APPELLANTS.

FILED JANUARY 18, 1906.   No. 14,013.

1. Jurisdiction: QUIETING TITLE. The original jurisdiction of the district court over an action to quiet the title to real estate is not affected by the fact that incident thereto there is involved the construction of a will.

2. Wills: AMBIGUITY: PAROL EVIDENCE. Parol evidence is admissible

to explain a latent ambiguity in a will, where such evidence is necessary to enable the court to ascertain the intention of the testator.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*H. P. Stoddart,* for appellants.

*Smyth & Smith, contra.*

JACKSON, C.

Joseph Creighton died leaving a will as follows:

"Know all men by these presents, that I, Joseph Creighton, of the City of Omaha, in the state of Nebraska, being of sound disposing mind and memory, do hereby make, publish and declare this my last will and testament, as follows:

"Imprimis, after the payment of all my debts and the expenses of my funeral and the erection at my grave of a proper stone to mark the same, I give and bequeath unto the children of my daughter, Mrs. Mary Bridget Shelby, certain lots situate in the city of Omaha aforesaid, whereof I am seized, that is to say, lot eight (8) in block twenty-two (22) lot two (2) in block twenty-two (22) and lot four (4) in block sixty-one (61).

"Item. I hereby give and bequeath unto the Rt. Reverend James O'Connor, Bishop of Omaha, if he shall survive me, the following lands situate in the county of Douglas in said state, that is to say, the northwest quarter of the northwest quarter of section two (2) in township fifteen (15) north of range thirteen east of the sixth principal meridian, the southwest quarter of the northwest quarter of section thirty-five (35) and lot four (4) in said section both in township sixteen north of range thirteen (13) aforesaid, and also all that certain piece of land situate in Dallas county in the state of Iowa known as the east half of the northwest quarter of section twenty (20) in township eighty (80) north of range twenty-eight (28). If

the said Bishop O'Connor do not survive me then my will is that the said land shall go to his successor as bishop of Omaha. My wish and direction is that the said Bishop O'Connor, if he survive me, or his said successor as bishop of Omaha, apply the said lands and the proceeds arising from the same or the sale thereof to some charity according to his judgment, but I prefer that the same be applied to the establishment or maintenance of an orphanage.

"Item. Subject to the charge thereon mentioned in the next succeeding item of this my will, I do devise, bequeath and will all the rest, residue and remainder of all the property of which I may die seized or possessed of to my said daughter, Mary Bridget Shelby, in trust for her children or such of them as shall be living at her death, to take, have and hold the same and every part thereof and the rents, issues, profits and interest arising therefrom for the said children.

"Item. All of the property mentioned in the last above item shall be charged with the sum of fifteen dollars per week and to be paid by my said daughter for the support and maintenance of the sister of my wife, Mary Furlong, so long as she may live. My said daughter shall be executrix of this my last will and testament."

The testator never owned the southwest quarter of the northwest quarter of section 35, township 16, range 13, described in the bequest to the bishop of Omaha, but, in addition to the other real estate described in the will, he did own at the time the will was executed, and died seized of, the southwest quarter of the southwest quarter of that section, and, other than the tract last described and that correctly described in the will, he owned no other real estate. Bishop O'Connor did not survive the testator, and at his death was succeeded by Rt. Reverend Richard Scannell as bishop of Omaha, who after the death of Creighton deeded to the plaintiff the real estate described in the bequest to Bishop O'Connor. The defendants, Mary B. Shelby and her children, after the will was admitted to probate, entered into the possession of the southwest quar-

41

ter of the southwest quarter of section 35, township 16, range 13, and claim title to the same under the residuary clause of the will. The plaintiff claims title through the conveyance by Bishop Scannell, and instituted this action in the district court for Douglas county, reciting in its petition that Joseph Creighton died October 16, 1893, leaving the will set out above; that the will was admitted to probate as the will of Creighton; alleging title to the disputed tract in Creighton, both at the time of the execution of the will and his death, and alleging that Creighton did devise, and intended to devise, for the purpose stated in the will, that tract; recited the death of Bishop O'Connor and that the Rt. Reverend Richard Scannell became his successor; set out the conveyance from Bishop Scannell to the plaintiff; that the defendants had entered into the possession of the disputed tract and claimed title thereto; that their possession was wrongful and constituted a cloud upon the title of the plaintiff to that tract, and concluded with the following prayer: "That said mistake in the description of said ¼ section be corrected; that the said will be construed to convey the title of said Joseph Creighton to the said S. W. ¼ of the S. W. ¼ of said section 35 to the said Bishop Scannell, and that the said Bishop Scannell has conveyed the said title to this plaintiff; that the said claims of the said defendants, whatever they may be, together with said mistake in said will, be declared to be a cloud on the plaintiff's title; that the said cloud be removed; that plaintiff's title be quieted; that plaintiff be put in possession of said property, and for such other and further relief as justice and equity may require." There was a decree in the district court conforming to the prayer of the petition, and the defendants have appealed.

Two questions are presented by counsel for appellant: First, that the district court had no jurisdiction of the subject matter; and second, that the facts stated in the petition are not sufficient to constitute a cause of action.

It is urged that the action is one to secure the construc·

tion of a will and over which the county court has exclusive original jurisdiction. There should no longer remain a doubt as to what original jurisdiction is vested in the county court in the matter of settlement of estates. In *Boales v. Ferguson*, 55 Neb. 565, an action involving the accounts of an administrator, it was held that the county court had exclusive original jurisdiction. In *Williams v. Miles*, 63 Neb. 859, the question was as to the jurisdiction to vacate an order admitting a will to probate and for leave to present and have filed an alleged posterior will, and it was held that the county court had exclusive original jurisdiction. While in *Reischick v. Rieger*, 68 Neb. 348, an action by the administrator of the estate of a deceased heir against the executor of an estate, in which it was claimed that the representatives of the deceased had an interest and for the recovery of money only, it was held that the county court had original jurisdiction. And, finally, in *Youngson v. Bond*, 69 Neb. 356, the holding was that a suit by the administrator with the will annexed for the construction of a will, in order to enable him to administer the estate properly, was not maintainable in the first instance in the district court, and that the county court was not precluded from construing a will, in a proper case, and determining the effect and meaning of a devise of lands, so far as is necessary to give proper directions to an executor or administrator with the will annexed, but that the construction of the will in such a case is for the information and benefit of such executor or administrator only, in order to advise him what course to pursue; that it adjudicates nothing beyond his rights and liabilities in the execution of his office; that controversies between adverse claimants under the devise, or between the executor or administrator and persons claiming adversely to the estate, will not be affected thereby. To the same effect is *Anderson v. Anderson*, 69 Neb. 565. Our attention has not been called to any authority holding that the district court is without original jurisdiction in actions such as the one here involved, although incident thereto the court

is required to construe a will. In *Reischick v. Rieger, supra,* it was said by Mr. Commissioner ALBERT:

"We do not wish to be understood, however, as holding that the district court has no jurisdiction, under any circumstances, to construe a will. On the contrary, we can readily conceive of actions of which the district court has original jurisdiction, wherein the construction of a will would be necessarily involved."

The plaintiff in this action seeks to quiet its title to the real estate in controversy. In such an action the district court has original jurisdiction, and such jurisdiction is not defeated by the fact that there is necessarily involved in the inquiry the construction of a will.

The second contention is based upon the proposition that the cause of action stated in the petition is one which could not be sustained except by the admission of oral evidence for the purpose of correcting a mistake in a will. The case of *Seebrock v. Fedawa,* 33 Neb. 413, seems to be decisive of the question. In that case the testator devised lots 4, 9 and the west half of 10, in block 32, in the city of Lincoln. He was not the owner of lot 4, but did own lots 3, 9 and the west half of 10, and those were all of the lots possessed by him in that block, and it was held that lot 3 passed by the will. Mr. Justice MAXWELL, speaking for the court, said:

"While it is true that oral evidence cannot be admitted to change the language of a written instrument, and particularly of a will, yet the universal rule at the present time is to admit oral proof to show that one term was used for another, or that an essential term, to make the definition perfect, was omitted or erroneously stated. For the purpose of arriving at the intention of the testator, therefore, the will is to be read in the light of the surrounding circumstances. * * * The rule in construing wills is, that although there may be errors in the description, either in the legatee or the subject matter of the devise, it will not avoid the bequest if enough remains to show with reasonable certainty what was intended. * * *

It is evident that the testator intended to devise all the lots he possessed in block 32 in the city of Lincoln, and that lot 3 was intended in place of lot 4."

The principle there invoked was involved in *Second United Presbyterian Church v. First United Presbyterian Church*, 71 Neb. 563. We entertain no doubt that the testator in this case intended to devise the property in question to the bishop of Omaha for the purposes stated, and under the authority of *Seebrock v. Fedawa*, we so construe the will.

In the closing paragraph of the brief on behalf of the appellants, it is suggested that there is no competent evidence to support the finding in favor of the appellee, because the deed from the bishop to the appellee carries the same description as that found in the will. The deed, however, recites the conditions of the will and is doubtless sufficient to convey whatever title the grantor received from the testator.

The decree of the district court was right, and we recommend that it be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is .

AFFIRMED.