WILLIAM C. BORAH, JR., APPELLANT, V. LINCOLN HOSPITAL ASSOCIATION ET AL., APPELLEES.

46 N. W. 2d 166

Filed February 16, 1951. No. 32889.

*Frederick J. Patz,* for appellant.

*Cline, Williams & Wright, John Jacobson,* and *C. Russell Mattson,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is a declaratory judgment action by William C. Borah, Jr., plaintiff and appellant, against the Lincoln Hospital Association and William H. H. Moore, successor trustee under the last will and testament of Robert E. Moore, deceased, defendants and appellees.

The purpose of the action is to have interpreted and construed the will and codicils of Robert E. Moore, deceased, for the purpose of having determined whether the plaintiff is the vested remainderman of two trusts set up by a codicil or whether the Lincoln Hospital Association as residuary legatee is vested with this remainder.

The cause was tried to the district court where it was decreed that the Lincoln Hospital Association was vested with the remainder. From this decree the plaintiff has appealed.

The determination here must rest upon legal principles involved in the interpretation of wills rather than

upon disputed questions of fact since there is no substantial dispute as to the pertinent facts.

The pertinent facts are that in July 1912 Robert E. Moore made a will. In this will he bequeathed to Gertrude Byerly and to Julia Byerly each $10,000. These two were sisters, and nieces of the testator. Byerly was their maiden name. This was not, however, their name at that time. Gertrude's name was Johnson. She had been married. Her husband died in 1908 as did a child, the only child ever born to her. Julia's name was Borah. In 1916 Gertrude and Julia were living in Springfield, Illinois. Julia and her husband maintained a home there and Gertrude was employed and lived in the home with them. Julia at that time had a son, the plaintiff in this action. In June 1916 the testator visited in Springfield, Illinois, where he saw the sisters and the plaintiff. The plaintiff was then just under four years of age. He was an only child and Julia never thereafter had any other children. In December of 1916 the testator added a codicil to his will reducing the bequests of the sisters to life estates with remainder over as follows: "In case of the death of Gertrude Byerly or Julia Byerly, or either of them, the legacy bequeathed to them in said will shall descend to and vest in the child of Gertrude Byerly."

In June of 1919 the testator by codicil increased the bequests to the sisters from $10,000 to $15,000 each and attached to them the previous conditions that they were to be life estates with the vested remainder in the child of Gertrude Byerly.

Factually Gertrude Byerly had no child either in 1916 or 1919. Her only child, as has been pointed out, died in 1908. The plaintiff was the only child of either of the sisters in being in 1916 or which came into being thereafter. These sisters were daughters of testator's sister whose married name was Byerly.

The theory of plaintiff is that it was the intention of the testator that these bequests should vest in remainder in the plaintiff, the child of Julia, although the codicil

stated "the child of Gertrude Byerly"; that this is a latent ambiguity which is subject to explanation by extrinsic evidence.

The defendant Lincoln Hospital Association by its brief indicates agreement that here is a latent ambiguity but its theory is, briefly stated, that Gertrude Byerly may be shown not to have a child at the time but that it is improper to show that Julia Byerly had a child and that this was the child intended by the testator, since to do so would have the effect in this respect of rewriting the will, a power which may not be exercised by the courts under the latent ambiguity rule. It contends that since the designee named in the will did not exist the remainder vests in the Lincoln Hospital Association, the residuary legatee named in the will.

The other defendant has presented no theory of interpretation. He has asked only that interpretation be made by the court and that he be advised thereof. Therefore for the further purposes of this opinion the Lincoln Hospital Association will be referred to as the appellee.

The principle is well settled that extrinsic evidence is not admissible for the purpose of changing a will or in the making of a new one which was intended by the testator but which was not in fact made by him. In re Estate of Robinson, 139 Neb. 707, 298 N. W. 559.

It is likewise well settled that in construing a will, the whole thereof will be considered and from its four corners the court will determine the intent of the testator and give effect thereto, and that extrinsic evidence is not admissible to determine the intent of a testator as expressed in his will unless there is a latent ambiguity. Lincoln Nat. Bank & Trust Co. v. Grainger, 129 Neb. 451, 262 N. W. 11; Woelk v. Luckhardt, 134 Neb. 55, 277 N. W. 836, 115 A. L. R. 437; In re Estate of Robinson, *supra*.

Also in case of a latent ambiguity which consists of an erroneous description of a beneficiary, sufficient language must remain in the will, which, together with ex-

trinsic evidence, will identify the intended beneficiary with reasonable certainty, otherwise the legacy is void. Seebrock v. Fedawa, 33 Neb. 413, 50 N. W. 270, 29 Am. S. R. 488; Second United Presbyterian Church v. First United Presbyterian Church, 71 Neb. 563, 99 N. W. 252; St. James Orphan Asylum v. Shelby, 75 Neb. 591, 106 N. W. 604; Heywood v. Heywood, 92 Neb. 72, 137 N. W. 984; Mohr v. Harder, 103 Neb. 545, 172 N. W. 753; Burnham v. Bennison, 126 Neb. 312, 253 N. W. 88.

Extrinsic evidence is admissible to prove that a will contains a latent ambiguity and to explain the ambiguity for the purpose of arriving at the true intent of the testator. Mohr v. Harder, *supra;* Elliott v. Quinn, 109 Neb. 5, 189 N. W. 173; In re Estate of Schuette, 138 Neb. 568, 293 N. W. 421; Brandeis v. Brandeis, 150 Neb. 222, 34 N. W. 2d 159.

The intent which may be shown must be the intent which the testator had when he employed the words which appear in the will. If he named or described a person in the will and it became apparent that this was a misdescription or that two or more persons bore the same description not only could the ambiguity be shown by extrinsic evidence but also the true intent in that connection could be shown if it did no violence otherwise to the language of the will. Seebrock v. Fedawa, *supra;* St. James Orphan Asylum v. Shelby, *supra;* Heywood v. Heywood, *supra;* Herter v. Herter, 97 Neb. 260, 149 N. W. 795; Mohr v. Harder, *supra;* Elliott v. Quinn, *supra;* Burnham v. Bennison, *supra;* 69 C. J., Wills, § 1187, p. 161; In re Estate of Peterson, 202 Minn. 31, 277 N. W. 529.

As pointed out hereinbefore there was no such person as "the child of Gertrude Byerly." The appellee effactually conceded that this presented a latent ambiguity subject to proof by extrinsic evidence. It contends however that the plaintiff may not go beyond this and also prove extrinsicly that the plaintiff, the child

of Julia Byerly, was the person intended to be described by the testator.

It appears that reliance for support of this contention rests upon the language contained in Burnham v. Bennison, *supra,* and Patch v. White, 117 U. S. 210, 6 S. Ct. 617, 29 L. Ed. 860.

In Patch v. White, *supra,* it was said: "Where it (a latent ambiguity) consists of a misdescription, as before stated, if the misdescription can be struck out, and enough remain in the will to identify the person or thing, the court will deal with it in that way; or, if it is an obvious mistake, will read it as if corrected."

In Burnham v. Bennison, *supra,* it was said: "Where a latent ambiguity consists of an erroneous description of a beneficiary, such erroneous description will not avoid the legacy if it can be struck out and from the remaining portion, together with proof dehors the instrument, the intended beneficiary clearly appears."

The appellee substantially urges that under the authority of these statements the misdescription must be regarded as stricken out and with it thus stricken no description remains and thus the legacy fails for want of description of a taker.

The quoted language of Patch v. White, *supra,* may be subject to such an interpretation but clearly the same is not true of the quotation from Burnham v. Bennison, *supra.* The language of this case specifically contemplates the striking of the misdescription and the supplying of the intended description by proof dehors the instrument, in this case the codicil. This case therefore contains the rule obtaining in this jurisdiction.

Other pronouncements of this court which demonstrate that this is the rule in this jurisdiction are the following:

"When a testator has named in his will as a beneficiary a child who died before the will was written, and without heirs, and it clearly appears that he intended to name another child, then living, as such beneficiary, but by inadvertence or mistake the name of the deceased child

was inserted instead of that of such living child, the district court has power in a proper case to construe the will to express the real intent of the testator in that regard as shown by the evidence." Mohr v. Harder, *supra*.

"Where the intention of the testator is to be gathered from the will itself and from the extrinsic evidence of facts surrounding its execution, such extrinsic evidence is admissible for the purpose of ascertaining whether a state of facts existed at the time the will was written which corresponded with the words used and the aim of the testator. Such evidence may not be admitted to vary the terms of the will or to add anything to it so as to arrive at an intention not expressed in it, but to harmonize the language used by the testator with the facts referred to, and thus to arrive at the testator's intention as expressed in the will, and a ruling which makes the will and the facts inconsistent is not to be adopted." Heywood v. Heywood, *supra*.

We conclude therefore that it was proper for the plaintiff to show by extrinsic evidence that the use of the words "the child of Gertrude Byerly" was erroneous and that the testator's true intention was to say instead "the child of Julia Byerly."

The remaining question is that of whether or not the extrinsic evidence adduced and offered was sufficient to so show. This calls for a review of the evidence in this respect.

The record discloses that the testator had little contact with the sisters at any time. He did know that Gertrude had been married and that her husband had died. He knew this soon after the husband's death which was in 1908. Soon after the death he talked with her about a plan on her part to become employed. Whether or not he knew that she had a child who died about the same time as her husband does not appear. About eight years later which was the occasion of the visit in June 1916, already mentioned, it may be reasonably said that he knew that Gertrude was a widow with-

out children and lived in the home of Julia. At that time he became informed of the fact that Julia had an only child, the plaintiff herein. He met the child and appeared to be favorably impressed with him. A few months later he made and published the codicil which is the subject of this controversy.

At the time he made this codicil the testator must have intended the legacy to go to some one in being rather than some one not in being, and reasonably it must be said that extrinsic evidence was admissible to identify the person in being and intended.

The proper rule we think is that when a description is found in a will which does not accurately apply to anybody and the alternatives are either that it means nothing and the bequest fails, or that an effort may be made to ascertain the identity of the person intended, extrinsic evidence should be admitted to aid in ascertaining such identity. Parsons v. Parsons, 30 Eng. Reprints 335; In re Halston (1912), 1 Chan. 435; Re Walker (1924), 1 D. L. R. 719; Theobald on Wills (7th ed.) (1908), p. 265.

On the evidence and under the principles referred to herein the conclusion of this court is that the district court erred in decreeing that plaintiff is not the beneficiary of the clause of the codicil under consideration herein and also erred in decreeing that, as between the plaintiff and the appellee, the appellee as residuary legatee is entitled to the legacy.

The decree of the district court is accordingly reversed and the cause remanded with direction to enter a declaratory decree declaring the plaintiff to be the person described in the codicil as "the child of Gertrude Byerly" and that as such he is vested with the remainder of the estates bequeathed to Gertrude Byerly and Julia Byerly by the will of Robert E. Moore, deceased.

REVERSED AND REMANDED WITH DIRECTIONS.